Ryan J. Lorenz (SBN 019878)
**CLARK HILL PLC**
14850 N. Scottsdale Road, Suite 500
Scottsdale, AZ 85254
Telephone: (480) 684-1107
Facsimile: (480) 684-1167
rlorenz@clarkhill.com

Michael Keeley, Texas Bar No. 11157800 (*Admitted Pro Hac Vice)*
C. Adam Brinkley, Texas Bar No. 24098954 (*Admitted Pro Hac Vice)*
**CLARK HILL STRASBURGER**
901 Main Street, Suite 6000
Dallas, TX 75202
Telephone: (214) 651-4718
Facsimile: (214) 659-4121
mkeeley@clarkhill.com
abrinkley@clarkhill.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Discovery Land Company, LLC; Discovery Land Enterprises, LLC; and Taymouth Castle DLC, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Berkley Insurance Company; and Great American Insurance Company,<br><br>Defendants. | No. 2:20-cv-01541-JJT<br><br>**DEFENDANT BERKLEY INSURANCE COMPANY'S AMENDED ANSWER AND COUNTERCLAIM** |

Defendant Berkley Insurance Company ("BIC") files this its Amended Answer and Counterclaim to the Complaint filed herein by plaintiffs Discovery Land Company, LLC ("DLC"), Discovery Land Enterprises, LLC ("DLE"), and Taymouth Castle DLC, LLC ("TCD") (DLC, DLE, and TCD are referred to herein collectively as the "Plaintiffs").

**Introduction**

1. Answering paragraph 1 of the Complaint, BIC admits that it issued a Commercial Crime Policy to DLC and that Great American Insurance Company ("GAIC")

issued an excess policy. Further answering paragraph 1 of the Complaint, BIC denies the remaining allegations contained therein.

2. Answering paragraph 2 of the Complaint, BIC admits that the Plaintiffs submitted two separate proofs of loss. Further answering paragraph 2 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

3. Answering paragraph 3 of the Complaint, BIC admits the first proof of loss relates to Steven David Jones' ("Jones") alleged theft of money in connection with the purchase of Taymouth Castle. Further answering paragraph 3 of the Complaint, BIC denies the remaining allegations contained therein.

4. Answering paragraph 4 of the Complaint, BIC admits the second proof of loss relates to a loan allegedly taken out against Taymouth Castle. Further answering paragraph 4 of the Complaint, BIC denies the remaining allegations contained therein.

5. Answering paragraph 5 of the Complaint, BIC denies the allegations contained therein.

6. Answering paragraph 6 of the Complaint, BIC denies the allegations contained therein.

7. Answering paragraph 7 of the Complaint, BIC admits that Plaintiffs seek the requested relief, but BIC denies that the Plaintiffs are entitled to any such relief.

**The Parties**

8. Answering paragraph 8 of the Complaint, BIC admits the allegations contained therein.

9. Answering paragraph 9 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegation that DLE is frequently known as Discovery Land Holdings, LLC. Further answering paragraph 9 of the Complaint, BIC admits the remaining allegations contained therein.

10. Answering paragraph 10 of the Complaint, BIC admits the allegations contained therein.

11. Answering paragraph 11 of the Complaint, BIC admits the allegations contained therein.

12. Answering paragraph 12 of the Complaint, BIC admits the allegations contained therein.

**Jurisdiction, Venue and Discovery Tier**

13. Answering paragraph 13 of the Complaint, BIC need not admit or deny the allegations which relate to venue because those facts are no longer relevant due to the removal of this case to federal court. BIC admits that this Court has proper venue of the claims asserted.

14. Answering paragraph 14 of the Complaint, BIC need not admit or deny the allegations which relate to jurisdiction because those facts are no longer relevant due to the removal of this case to federal court. BIC admits that this Court has proper jurisdiction of the claims asserted.

15. Answering paragraph 15 of the Complaint, BIC need not admit or deny the allegations which relate to jurisdiction because those facts are no longer relevant due to the removal of this case to federal court. BIC admits that this Court has proper jurisdiction of the claims asserted.

16. Answering paragraph 16 of the Complaint, BIC need not admit or deny the allegation in paragraph 16 of the Complaint that discovery is intended to be conducted under Tier 3 in accordance with Ariz. R. Civ. P. 26.2(c)(3)(C) because this allegation is no longer relevant because BIC has removed this lawsuit to federal court.

**The Insurance Policies**

17. Answering the first sentence of paragraph 17 of the Complaint, BIC admits it issued Commercial Crime Policy, Policy No. BCCR-45002757-21, with a Policy Period

of January 28, 2019, to January 28, 2020, (the "Primary Policy") to DLC. Further answering the first sentence of paragraph 17 of the Complaint, BIC denies the remaining allegations contained therein. Answering the second sentence of paragraph 17 of the Complaint, BIC admits the allegations contained therein.

18. Answering the first sentence of paragraph 18 of the Complaint, BIC admits that GAIC issued Excess Follow Form Certificate, Policy No. XSC E315871 01 00, with a Policy Period of January 28, 2019, to January 28, 2020, (the "Excess Policy") to DLC. Further answering the first sentence of paragraph 18 of the Complaint, BIC denies the remaining allegations contained therein. Answering the second sentence of paragraph 18 of the Complaint, on information and belief, BIC admits the allegations contained therein.

19. Answering paragraph 19 of the Complaint, BIC admits the allegations contained therein.

20. Answering paragraph 20 of the Complaint, BIC admits that the Primary Policy and the Excess Policy potentially provide coverage for employee theft, forgery or alteration, loss outside the premises, and additional coverages, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy and the Excess Policy.

21. Answering paragraph 21 of the Complaint, BIC admits that DLC paid the premium for the Primary Policy. Further answering paragraph 21 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

22. Answering paragraph 22 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

23. Answering paragraph 23 of the Complaint, BIC admits that DLC is listed as the named insured in the Primary Policy's Declarations. Further answering paragraph 23 of the Complaint, BIC denies the remaining allegations contained therein.

24. Answering paragraph 24 of the Complaint, BIC admits the allegations contained therein.

25. Answering paragraph 25 of the Complaint, BIC admits the allegations contained therein, but because TCD was added as an insured based upon a fraudulent omission and/or concealment of material fact, BIC is entitled to and hereby rescinds Endorsement Nos. 24, 26, and 28 (together, the "Endorsements").

26. Answering paragraph 26 of the Complaint, BIC admits that DLE is the sole member of TCD. Further answering paragraph 26 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

27. Answering paragraph 27 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

28. Answering paragraph 28 of the Complaint, BIC denies the allegations contained therein.

29. Answering paragraph 29 of the Complaint, BIC admits that the Primary Policy contains the language quoted in paragraph 29 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

30. Answering paragraph 30 of the Complaint, BIC admits the allegations contained therein.

31. Answering paragraph 31 of the Complaint, BIC admits the Primary Policy contains the insuring agreements listed in paragraph 31 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

32. Answering paragraph 32 of the Complaint, BIC admits that Insuring Agreement A.1. of the Primary Policy contains the language quoted in paragraph 32 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

33. Answering paragraph 33 of the Complaint, Berkley admits that the Primary Policy contains the language quoted in paragraph 33 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

34. Answering paragraph 34 of the Complaint, BIC denies that Plaintiffs have accurately or fully quoted the definition of "Employee" in the Primary Policy, but BIC admits that the Primary Policy defines "Employee", in relevant part, as:

> (1) Any natural person:
>
> > (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";
> >
> > (b) Whom you compensate directly by salary, wages or commissions; and
> >
> > (c) Whom you have the right to direct and control while performing services for you;

35. Answering paragraph 35 of the Complaint, BIC admits the allegations contained therein.

36. Answering paragraph 36 of the Complaint, BIC admits that the Primary Policy contains the language quoted in paragraph 36 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

37. Answering paragraph 37 of the Complaint, BIC admits that the Primary Policy contains the language quoted in paragraph 37 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

38. Answering paragraph 38 of the Complaint, BIC admits the allegations contained therein.

39. Answering paragraph 39 of the Complaint, BIC admits that the Primary Policy contains the language quoted in paragraph 39 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

40. Answering paragraph 40 of the Complaint, BIC admits the allegations contained therein.

41. Answering paragraph 41 of the Complaint, BIC admits that the Primary Policy contains the language quoted in paragraph 41 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

42. Answering paragraph 42 of the Complaint, Berkley admits that the Primary Policy contains the language quoted in paragraph 42 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

43. Answering paragraph 43 of the Complaint, Berkley admits that the Primary Policy contains the language quoted in paragraph 43 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Primary Policy.

44. Answering paragraph 44 of the Complaint, BIC admits the allegations contained therein.

45. Answering paragraph 45 of the Complaint, BIC denies the allegations contained therein.

46. Answering paragraph 46 of the Complaint, BIC denies that the Plaintiffs have accurately or fully quoted the definition of occurrence for purposes of Insuring Agreement A.5., but BIC admits that the Primary Policy defines occurrence under all other Insuring Agreements to mean:

(1) An individual act or event;

(2) The combined total of all separate acts or events whether or not related; or

(3) A series of acts or events whether or not related;

> committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

47. Answering paragraph 47 of the Complaint, BIC admits that the Excess Policy contains the language quoted in paragraph 47 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the Excess Policy.

48. Answering paragraph 48 of the Complaint, BIC admits the allegations contained therein.

**<u>Factual Background of First Loss</u>**

49. Answering paragraph 49 of the Complaint, BIC admits that Plaintiff's first proof of loss relates to Jones' alleged theft. Further answering paragraph 49 of the Complaint, BIC denies the remaining allegations contained therein.

50. Answering paragraph 50 of the Complaint, BIC admits that Taymouth Castle is located in Scotland. Further answering paragraph 50 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

51. Answering paragraph 51 of the Complaint, BIC admits that on April 11, 2018, Jirehouse sent DLC a letter regarding the General Terms and Conditions of Engagement. Further answering paragraph 51 of the Complaint, BIC denies the remaining allegations contained therein.

52. Answering paragraph 52 of the Complaint, BIC denies the allegations contained therein.

53. Answering paragraph 53 of the Complaint, BIC admits that Jirehouse's April 11, 2018, letter to DLC contains the language quoted in paragraph 53 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the letter.

54. Answering paragraph 54 of the Complaint, BIC admits that Jirehouse's April 11, 2018, letter to DLC provides that "[w]e enter into this letter on behalf of Jirehouse, Jirehouse Partners, LLP, Jirehouse Trustees Ltd. as well as in respect of Jirehouse's branches in Lausanne and Nevis (also registered with the SRA), to the extent that any one of them should provide services to you, directly or indirectly, through collaboration and/or partnership arrangements entered into with Jirehouse as a separate entity." Further answering paragraph 54 of the Complaint, BIC denies the remaining allegations contained therein.

55. Answering the first sentence of paragraph 55 of the Complaint, BIC denies the allegations contained therein. Answering the second sentence of paragraph 55 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

56. Answering paragraph 56 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

57. Answering paragraph 57 of the Complaint, BIC denies the allegations contained therein.

58. Answering paragraph 58 of the Complaint, BIC denies the allegations contained therein.

59. Answering paragraph 59 of the Complaint, BIC admits that Jirehouse's May 24, 2018, Specific Engagement Terms letter sent to DLC contains the language quoted in paragraph 59 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the letter.

60. Answering paragraph 60 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

61. Answering paragraph 61 of the Complaint, BIC admits that the May 24, 2018, Specific Engagement Terms letter provides that Esquiline Asset Managers Limited

("EAML") is "affiliated to this firm." Further answering paragraph 61 of the Complaint, BIC admits that the May 24, 2018, Specific Engagement Terms letter contains the language quoted in paragraph 61 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully quoted the terms of the letter. Further answering paragraph 61 of the Complaint, BIC denies the remaining allegations contained therein.

62. Answering paragraph 62 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

63. Answering paragraph 63 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

64. Answering paragraph 64 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

65. Answering paragraph 65 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

66. Answering paragraph 66 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

67. Answering paragraph 67 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

68. Answering paragraph 68 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

69. Answering paragraph 69 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

70. Answering paragraph 70 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

71. Answering paragraph 71 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

72. Answering paragraph 72 of the Complaint, BIC denies that Jirehouse is TCD's partner. Further answering paragraph 72 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

73. Answering paragraph 73 of the Complaint, BIC admits that the May 24, 2018, Specific Engagement Terms letter contains the language quoted in paragraph 73 of the Complaint, but BIC denies that the Plaintiffs have accurately or fully characterized the terms of the letter.

74. Answering paragraph 74 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

75. Answering paragraph 75 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

76. Answering paragraph 76 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

77. Answering paragraph 77 of the Complaint, BIC denies that Jirehouse is the Plaintiffs' partner. Further answering paragraph 77 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

78. Answering paragraph 78 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

79. Answering paragraph 79 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

80. Answering paragraph 80 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

81. Answering paragraph 81 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

82. Answering paragraph 82 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

83. Answering paragraph 83 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

84. Answering paragraph 84 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

85. Answering paragraph 85 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

86. Answering paragraph 86 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

87. Answering paragraph 87 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

88. Answering paragraph 88 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

89. Answering paragraph 89 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

90. Answering paragraph 90 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

91. Answering paragraph 91 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

92. Answering paragraph 92 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

93. Answering the first sentence of paragraph 93 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein. Answering the second sentence of paragraph 93 of the Complaint, BIC denies the allegations contained therein.

94. Answering the first sentence of paragraph 94 of the Complaint, BIC denies the allegations contained therein. Answering the second sentence of paragraph 94 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

**Factual Background of Second Loss**

95. Answering paragraph 95 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

96. Answering paragraph 96 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

97. Answering paragraph 97 of the Complaint, BIC admits that Michael Meldman is listed on the loan application as "Shareholder/Director/Guarantor 8." Further answering paragraph 97 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

98. Answering paragraph 98 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

99. Answering paragraph 99 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

100. Answering paragraph 100 of the Complaint, BIC denies the allegations contained therein.

101. Answering paragraph 101 of the Complaint, BIC admits that on February 21, 2019, John Clark, on behalf of The River Tay Castle LLP ("RTC"), executed the Standard Security Agreement in favor of Dragonfly Finance S.ar.l ("Dragonfly"), in respect of land at Taymouth Castle Estate. Further answering paragraph 101 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained therein.

102. Answering paragraph 102 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

103. Answering paragraph 103 of the Complaint, BIC admits that RTC was the borrower in connection with the loan from Dragonfly, but BIC specifically denies that RTC is an insured under the Primary Policy. Further answering paragraph 102 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

104. Answering paragraph 104 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

105. Answering paragraph 105 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

106. Answering paragraph 106 of the Complaint, BIC denies that Plaintiffs' alleged loss arises from the loan application. Further answering paragraph 106 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

107. Answering paragraph 107 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

108. Answering paragraph 108 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

109. Answering paragraph 109 of the Complaint, BIC denies the allegations contained therein.

110. Answering paragraph 110 of the Complaint, BIC denies the allegations contained therein.

111. Answering paragraph 111 of the Complaint, BIC denies the allegations contained therein.

112. Answering paragraph 112 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

113. Answering paragraph 113 of the Complaint, BIC lacks knowledge or information sufficient to form a belief about the truth of the allegations contained therein.

**Defendants Deny Coverage for Plaintiffs' Claims**

114. Answering paragraph 114 of the Complaint, BIC admits the allegations contained therein.

115. Answering paragraph 115 of the Complaint, BIC denies the allegations contained therein.

116. Answering paragraph 116 of the Complaint, BIC denies the allegations contained therein.

117. Answering paragraph 117 of the Complaint, BIC admits the allegations contained therein.

118. Answering paragraph 118 of the Complaint, BIC denies the allegations contained therein.

119. Answering paragraph 119 of the Complaint, BIC denies the allegations contained therein.

120. Answering paragraph 120 of the Complaint, BIC admits the allegations contained therein.

**Count One**

**Declaratory Judgment – First Loss**

**(Against all Defendants)**

121. Answering paragraph 121 of the Complaint, BIC incorporates herein by reference its answers to paragraphs 1 through 120 of the Complaint.

122. Answering paragraph 122 of the Complaint, BIC admits that Plaintiffs' Count One is "raised under A.R.S. Sections 12-1831 through 12-1846."

123. Answering paragraph 123 of the Complaint, BIC admits the allegations contained therein.

124. Answering paragraph 124 of the Complaint, BIC denies the allegations contained therein.

125. Answering paragraph 125 of the Complaint, BIC denies the allegations contained therein.

126. Answering paragraph 126 of the Complaint, BIC admits the allegations contained therein, but BIC denies that Plaintiffs have accurately or fully explained the basis for Defendants' coverage decisions.

127. Answering paragraph 127 of the Complaint, BIC denies the allegations contained therein.

128. Answering the first sentence of paragraph 128 of the Complaint, BIC admits the allegations contained therein. Answering the second sentence of paragraph 128 of the Complaint, BIC denies the allegations contained therein.

**Count Two**

**<u>Declaratory Judgment – Second Loss</u>**

**(Against all Defendants)**

129. Answering paragraph 129 of the Complaint, BIC incorporates herein by reference its answers to paragraphs 1 through 128 of the Complaint.

130. Answering paragraph 130 of the Complaint, BIC admits that Plaintiffs' Count Two is "raised under A.R.S. Sections 12-1831 through 12-1846."

131. Answering paragraph 131 of the Complaint, BIC admits the allegations contained therein.

132. Answering paragraph 132 of the Complaint, BIC denies the allegations contained therein.

133. Answering paragraph 133 of the Complaint, BIC denies the allegations contained therein.

134. Answering paragraph 134 of the Complaint, BIC denies that Plaintiffs' alleged loss results from the loan application. Further answering paragraph 134 of the Complaint, BIC admits the remaining allegations contained therein, but BIC denies that Plaintiffs have accurately or fully explained the basis for Defendants' coverage decisions.

135. Answering paragraph 135 of the Complaint, BIC denies the allegations contained therein.

136. Answering the first sentence of paragraph 136 of the Complaint, BIC admits the allegations contained therein. Answering the second sentence of paragraph 136 of the Complaint, BIC denies the allegations contained therein.

**Count Three**

**Breach of Contract – First Loss**

**(Against all Defendants)**

137. Answering paragraph 137 of the Complaint, BIC incorporates herein by reference its answers to paragraphs 1 through 136 of the Complaint.

138. Answering paragraph 138 of the Complaint, BIC admits that the Primary Policy and the Excess Policy are contracts. Further answering paragraph 138 of the Complaint, BIC admits that it and DLC are parties to the Primary Policy and admits that GAIC and DLC are parties to the Excess Policy. Further answering paragraph 138 of the Complaint, BIC denies the remaining allegations contained therein.

139. Answering paragraph 139 of the Complaint, BIC denies the allegations contained therein.

140. Answering paragraph 140 of the Complaint, BIC denies the allegations contained therein.

141. Answering paragraph 141 of the Complaint, BIC denies the allegations contained therein.

142. Answering paragraph 142 of the Complaint, BIC denies the allegations contained therein.

143. Answering the first sentence of paragraph 143 of the Complaint, BIC admits the allegations contained therein. Answering the second sentence of paragraph 143 of the Complaint, BIC denies the allegations contained therein.

**Count Four**

**Breach of Contract – Second Loss**

**(Against all Defendants)**

144. Answering paragraph 144 of the Complaint, BIC incorporates herein by reference its answers to paragraphs 1 through 143 of the Complaint.

145. Answering paragraph 145 of the Complaint, BIC admits that the Primary Policy and the Excess Policy are contracts. Further answering paragraph 145 of the Complaint, BIC admits that it and DLC are parties to the Primary Policy and admits that GAIC and DLC are parties to the Excess Policy. Further answering paragraph 145 of the Complaint, BIC denies the remaining allegations contained therein.

146. Answering paragraph 146 of the Complaint, BIC denies the allegations contained therein.

147. Answering paragraph 147 of the Complaint, BIC denies the allegations contained therein.

148. Answering paragraph 148 of the Complaint, BIC denies the allegations contained therein.

149. Answering paragraph 149 of the Complaint, BIC denies the allegations contained therein.

150. Answering the first sentence of paragraph 150 of the Complaint, BIC admits the allegations contained therein. Answering the second sentence of paragraph 150 of the Complaint, BIC denies the allegations contained therein.

**Count Five**

**Bad Faith**

**(Against Defendant Berkley)**

151. Answering paragraph 151 of the Complaint, BIC incorporates herein by reference its answers to paragraphs 1 through 150 of the Complaint.

152. Answering paragraph 152 of the Complaint, BIC states that it consists of a legal conclusion, as to which no response is required.

153. Answering paragraph 153 of the Complaint, BIC that it consists of a legal conclusion, as to which no response is required.

154. Answering paragraph 154 of the Complaint, BIC denies the allegations contained therein.

155. Answering paragraph 155 of the Complaint, BIC admits that it denied coverage for Plaintiff's claims under the Primary Policy, but BIC denies that Plaintiffs have accurately or fully explained the basis for BIC's coverage decisions. Further answering paragraph 155 of the Complaint, BIC denies the remaining allegations contained therein.

156. Answering paragraph 156 of the Complaint, BIC denies the allegations contained therein.

157. Answering paragraph 157 of the Complaint, BIC denies the allegations contained therein.

158. Answering paragraph 158 of the Complaint, BIC denies the allegations contained therein.

159. Answering paragraph 159 of the Complaint, BIC denies the allegations contained therein.

160. Answering paragraph 160 of the Complaint, BIC denies the allegations contained therein.

161. Answering paragraph 161 of the Complaint, BIC denies the allegations contained therein.

162. Answering the first sentence of paragraph 162 of the Complaint, BIC admits the allegations contained therein. Answering the second sentence of paragraph 162 of the Complaint, BIC denies the allegations contained therein.

## Prayer for Relief

163. Answering the "WHEREFORE" clause of the Complaint, BIC admits that the Plaintiffs pray for the requested relief, but BIC denies that Plaintiffs are entitled to any such relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

### (Discovery Outside Policy Period)

164. Pursuant to Section A of the Primary Policy, the Primary Policy applies to loss discovered during the Policy Period (January 28, 2019, to January 28, 2020). To the extent Plaintiffs' loss was discovered prior to the Policy Period of the Primary Policy, the Plaintiffs' claims are barred.

### SECOND AFFIRMATIVE DEFENSE

### (Exclusion D.1.a.)

165. Under Exclusion D.1.a., the Primary Policy does not cover:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

(1) You; or

(2) Any of your partners or "members";

whether acting alone or in collusion with other persons.

166. To the extent Plaintiffs' loss results from "theft" or other dishonest acts committed by the Plaintiffs or any of the Plaintiffs' partners, including, but not limited to, Jirehouse to the extent Jirehouse is deemed to be Plaintiffs' partner (which it is not), or "members", whether acting alone or in collusion with other persons, Plaintiffs' claims are barred by Exclusion D.1.a. of the Primary Policy.

## THIRD AFFIRMATIVE DEFENSE

## (Exclusion D.1.b)

167. Plaintiffs' claims are barred, in whole or in part, by Exclusion D.1.b. of the Primary Policy, as deleted and replaced by Endorsement No. 9, which provides that the Primary Policy does not cover:

> **b. Acts Committed by your Employees Learned Of By You Prior to the Policy Period**
>
> Loss caused by an "employee" if the "employee" has also committed "theft" or any other dishonest act in excess of $10,000 prior to the effective date of this policy and you or any of your partners, "members"; "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

## FOURTH AFFIRMATIVE DEFENSE

## (Exclusion D.1.c.)

168. Under Exclusion D.1.c., the Primary Policy does not cover:

> **c. Acts Committed By Your Employees, Managers, Directors, Trustees or Representatives**
>
> Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:
>
> (1) Whether acting alone or in collusion with other persons; or
>
> (2) While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1**.

169. Plaintiffs' loss resulted from "theft" and/or any other dishonest act committed by the Plaintiffs' "employee(s)" and/or authorized representative(s), and its losses are not covered under Insuring Agreement A.1. Therefore, coverage for Plaintiffs' claims are barred, in whole or in part, by Exclusion D.1.c. of the Primary Policy.

**FIFTH AFFIRMATIVE DEFENSE**

**(Exclusion D.1.g.)**

170. Plaintiffs' claims are barred, in whole or in part, by Exclusion D.1.g., which provides that the Primary Policy does not cover:

> **g. Indirect Loss**
>
> Loss that is an indirect result of an "occurrence" covered by this Policy including, but not limited to, loss resulting from:
>
> (1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";
>
> (2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this Policy; or
>
> (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Policy.

**SIXTH AFFIRMATIVE DEFENSE**

**(Exclusion D.1.h.)**

171. Plaintiffs' claims are barred, in whole or in part, by Exclusion D.1.h., which provides that the Primary Policy does not cover:

> **h. Legal Fees, Costs and Expenses**
>
> Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement A.2.

## SEVENTH AFFIRMATIVE DEFENSE

## (Exclusion D.3.b.)

172. Under Exclusion D.3.b., Insuring Agreements A.3., A.4. and A.5. of the Primary Policy do not cover:

> **b. Exchanges Or Purchases**
>
> Loss resulting from the giving or surrendering of Property in any exchange or purchase.

173. To the extent the Plaintiffs' loss results from the giving or surrendering of Property in any exchange or purchase, Plaintiffs' claims under Insuring Agreement A.5. are barred by Exclusion D.3.b. of the Primary Policy.

## EIGHTH AFFIRMATIVE DEFENSE

## (Exclusion D.3.f.)

174. Under Exclusion D.3.f., Insuring Agreements A.3., A.4. and A.5. of the Primary Policy do not cover:

> **f. Transfers Or Surrender Of Property**
>
> (1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "financial institution premises":
>
> (a) On the basis of unauthorized instructions; or
>
> (b) As a result of a threat including, but not limited to:
>
> (i) A threat to do bodily harm to any person;
>
> (ii) A threat to do damage to any property;
>
> . . . .
>
> (2) However, this exclusion does not apply under Insuring Agreement A.5. to loss of "money", "securities" or "other

> property" while outside the "premises" in the care and custody of a "messenger" if you:
>
> (a) Had no knowledge of any threat at the time the conveyance began; or
>
> (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

175. To the extent the Plaintiffs' loss results from the matters set forth in Exclusion D.3.f., their claims under Insuring Agreement A.5. are barred by Exclusion D.3.b. of the Primary Policy.

**NINTH AFFIRMATIVE DEFENSE**

**(Exclusion D.3.h.)**

176. Under Exclusion D.3.h., Insuring Agreements A.3., A.4. and A.5. of the Primary Policy do not cover:

> **h. Voluntary Parting Of Title To Or Possession Of Property**
>
> Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

177. To the extent the Plaintiffs' loss results from the Plaintiffs, or anyone acting on the Plaintiffs' express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property, Plaintiffs' claims under Insuring Agreement A.5. are barred by Exclusion D.3.h.

**TENTH AFFIRMATIVE DEFENSE**

**(Consolidation—Merger or Acquisition)**

178. Section E.1.e., entitled Consolidation—Merger or Acquisition, as deleted and replaced by Endorsement CR 20 26 08 07, of the Primary Policy provides:

> **a.** Except as provided in Paragraph b. if you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice and obtain our written consent to extend the coverage provided by this coverage form/policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this coverage form/policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided, that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities must occur after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**b.** For entities you acquire in which you own greater than 50% of the voting stock or voting rights, coverage under this coverage form/policy shall automatically become effective on the date of such acquisition with no additional premium required provided:

**(1)** All "occurrence" causing or contributing to a loss involving the acquired entity must take place after the effective date of such acquisition; and

**(2)** The assets of the acquired entity do not exceed the percentage shown in the Schedule of your total assets as reflected in your most recent calendar quarter consolidated financial statements immediately preceding the effective date of the coverage form/policy.

179. To the extent Plaintiffs' claims involve an entity that the Plaintiffs consolidated with, merged with, or purchased or acquired the assets or liabilities of, including, but specifically not limited to, RTC, and the Plaintiffs failed to provide notice and receive BIC's written consent in accordance with Section E.1.e. and/or the loss occurred before the effective date of such consolidation, merger, purchase or acquisition, Plaintiffs' claims are barred by Section E.1.e. of the Primary Policy.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Late Notice)**

180. Section E.1.g.(1), as modified by Endorsement No. 11 and Endorsement CR 04 01 08 13, of the Primary Policy provides:

> After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" that is likely to exceed 50% of the applicable deductible you must:
>
> **(1)** Notify us as soon as possible;

181. Strict compliance with Section E.1.g.(1) is a condition precedent to coverage under the Primary Policy. Plaintiffs did not provide notice of their loss as soon as possible after discovering a loss or a situation that resulted in loss of or damage to "money", "securities" or "other property" exceeding 50% of the applicable deductible. Therefore, coverage for Plaintiffs' claims are barred by Section E.1.g.(1) of the Primary Policy. Prejudice is not a requirement under Section E.1.g.(1). But, to the extent it is, and to the extent any such late notice prejudiced BIC, then coverage for Plaintiff's claimed loss is barred by Section E.1.g.(1) of the Primary Policy.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Late Proof of Loss)**

182. Section E.1.g.(2), as modified by Endorsement Nos. 11 and 19, of the Primary Policy provides:

> After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" that is likely to exceed 50% of the applicable deductible you must:
>
> . . . .
>
> (2) Give us detailed, sworn proof of loss within 180 days;

183. Strict compliance with Section E.1.g.(2) is a condition precedent to coverage under the Primary Policy. Plaintiffs did not provide BIC with a detailed, sworn proof of

loss within 180 days after discovering a loss or a situation that resulted in loss of or damage to "money", "securities" or "other property" exceeding 50% of the applicable deductible. Therefore, coverage for Plaintiffs' claims are barred by Section E.1.g.(2) of the Primary Policy. Prejudice is not a requirement under Section E.1.g.(2). But, to the extent it is, and to the extent any such late proof of loss prejudiced BIC, then coverage for Plaintiff's claimed loss is barred by Section E.1.g.(2) of the Primary Policy.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Late Filing of Lawsuit)**

184. Section E.1.m.(3) of the Primary Policy provides:

> You may not bring any legal action against us involving loss:
>
> . . . .
>
> **(3)** Unless brought within two years from the date you "discovered" the loss.
>
> If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

185. Strict compliance with Section E.1.m.(3) is a condition precedent to coverage under the Primary Policy. Plaintiffs did not file legal proceedings within two years from discovery of the loss. Therefore, coverage for Plaintiffs' claims are barred by Section E.1.m.(3) of the Primary Policy. Prejudice is not a requirement under Section E.1.m.(3). But, to the extent it is, and to the extent any such late filing of legal proceedings prejudiced BIC, then coverage for Plaintiff's claimed loss is barred by Section E.1.m.(3) of the Primary Policy.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Termination As To Any Employee)**

186. Plaintiffs' claims are barred, in whole or in part, by Section E.2.a.(1) of the Primary Policy, which provides:

**2. Conditions Applicable to Insuring Agreement A.1.**

**a. Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you;

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Voluntary Parting of Title To Or Possession of Money)**

187. Endorsement No. 20 provides that Insuring Agreements A.2. and A.6. of the Primary Policy do not cover:

**Voluntary Parting of Title To Or Possession of "Money", "Securities" and/or "other property"**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any fraudulent or dishonest act to voluntarily part with title to or possession of any "money", "securities" and/or "other property", except as specified in Insuring Agreement A.6.b.

188. To the extent the Plaintiffs' loss results from the Plaintiffs, or anyone acting on the Plaintiffs' express or implied authority, being induced by any fraudulent or dishonest act to voluntarily part with title to, or possession of, any "money", "securities" and/or "other property", Plaintiffs' claims under Insuring Agreement A.2. are barred by Endorsement No. 20.

## SIXTEENTH AFFIRMATIVE DEFENSE

## (Concealment, Misrepresentation or Fraud)

189. Section E.1.d., entitled Concealment, Misrepresentation Or Fraud, as deleted and replaced by Endorsement CR 02 27 12 14, of the Primary Policy provides:

> We will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts or incorrect statements:
>
> 1. That are fraudulent;
>
> 2. That are material either to the acceptance of the risk or to the hazard assumed by us; and
>
> 3. Where, if the true facts had been made known to us as required either by the application for the Policy or otherwise, we in good faith would either:
>
>    a. Not have issued the Policy;
>
>    b. Not have issued the Policy in as large an amount; or
>
>    c. Not have provided coverage with respect to the hazard resulting in the loss.

190. On or around July 26, 2019, DLC requested that additional entities be included as insureds under the Primary Policy. As a result, on July 29, 2019, BIC issued Endorsement Nos. 24 and 26, and later issued Endorsement No. 28, all of which included TCD and other entities associated with the purchase of the Taymouth Castle as insureds under the Primary Policy. At DLC's request, the Endorsements were made retroactive to January 28, 2019. BIC did not charge or receive any additional premium for issuing the Endorsements.

191. BIC issued the Endorsements with the understanding and belief, and on the condition, that TCD and the other entities added to the Primary Policy as insureds had not already incurred a loss at the time the Endorsements were issued.

192. On July 30, 2019, four days after requesting that TCD be included as an insured, DLC submitted two proofs of loss seeking recovery for losses incurred, in whole or in part, by TCD in connection with the purchase of the Taymouth Castle. The proofs of loss state that DLC discovered the losses on March 6, 2019—almost five months before DLC requested that TCD be included as an additional insured. The exhibits to the proofs of loss contain pleadings filed in March and June of 2019 on behalf of DLC and TCD in the United Kingdom concerning TCD's loss and involving the facts alleged in Plaintiffs' Complaint. As such, prior to requesting that TCD be included as an insured, DLC knew that TCD had incurred the same alleged loss, based upon the same alleged facts, upon which Plaintiffs' claims are based.

193. DLC's failure to disclose that TCD already incurred a loss when it requested that it be included as an insured constitutes a fraudulent and material misrepresentation, omission, concealment of fact or incorrect statement that was material to the acceptance of the risk or to the hazard assumed by BIC. By failing to inform BIC of its alleged loss, and the facts upon which it was based, DLC fraudulently omitted and/or concealed material information necessary to BIC's decision to issue the Endorsements. BIC would not have issued the Endorsements including TCD as an insured under the Primary Policy if it had known the true facts that TCD had already incurred a loss in connection with the purchase of the Taymouth Castle. Therefore, Plaintiffs' claims are barred by Section E.1.d. of the Primary Policy.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Rescission of Endorsement Nos. 24, 26, and 28 under Ariz. Rev. Stat. § 20-1109)**

194. Section 20-1109 of the Arizona Revised Statutes provides as follows:

> All statements and descriptions in any application for an insurance policy or in negotiations therefore, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

195. BIC incorporates herein by reference paragraphs 189 through 193 above as though specifically alleged herein.

196. For the same reasons alleged above, BIC is entitled to and hereby rescinds Endorsement Nos. 24, 26, and 28 under Section 20-1109 of the Arizona Revised Statutes.

## EIGHTEENTH AFFIRMATIVE DEFENSE

**(Rescission of Endorsement Nos. 24, 26, and 28 under Common Law)**

197. BIC incorporates herein by reference paragraphs 189 through 196 above as though specifically alleged herein.

198. For the same reasons alleged above, BIC is entitled to and hereby rescinds Endorsement Nos. 24, 26, and 28 under the common law of the State of Arizona.

## NINETEENTH AFFIRMATIVE DEFENSE

**(Fortuity Doctrine)**

199. BIC incorporates herein by reference paragraphs 189 through 198 above as though specifically alleged herein.

200. Plaintiffs' alleged losses in connection with the purchase of the Taymouth Castle were known or apparent at the time DLC sought to add TCD as an insured under the Primary Policy. Therefore, Plaintiffs' claims are barred by the Fortuity Doctrine.

### TWENTIETH AFFIRMATIVE DEFENSE

### (Adoption of Affirmative Defenses Alleged by Great American)

201. BIC adopts by reference all affirmative defenses alleged by GAIC in its Answer to the Complaint.

## COUNTERCLAIM

BIC asserts the following Counterclaim against Plaintiffs.

### I.

### FACTS

**A. Issuance of the Primary Policy and Endorsement Nos. 24, 26, and 28.**

1. BIC issued the Primary Policy to DLC, with a policy period of January 28, 2019, to January 28, 2020. TCD was not an insured under the Primary Policy when it was issued.

2. On or around July 26, 2019, DLC requested that additional entities, including TCD, be included as insureds under the Primary Policy. BIC was not informed that TCD had already incurred a loss as alleged in Plaintiffs' Complaint.

3. On July 29, 2019, BIC issued Endorsement Nos. 24 and 26, and later issued Endorsement No. 28, all of which included TCD and other entities associated with the purchase of the Taymouth Castle as insureds under the Primary Policy. At DLC's request, the Endorsements were made retroactive to January 28, 2019. BIC did not charge or receive any additional premium for issuing the Endorsements.

4. BIC issued the Endorsements with the understanding and belief, and on the condition, that TCD and the other entities added to the Primary Policy as insureds had not already incurred a loss at the time the Endorsements were issued.

**B. DLC's Fraudulent Omission and/or Concealment of Material Fact that TCD had already Incurred a Loss.**

5. On July 30, 2019, four days after requesting that TCD be included as an insured, DLC submitted two proofs of loss seeking recovery for losses incurred, in whole or in part, by TCD in connection with the purchase of the Taymouth Castle. The proofs of loss state that DLC discovered the losses on March 6, 2019—almost five months before DLC requested that TCD be included as an additional insured. The exhibits to the proofs of loss contain pleadings filed in March and June of 2019 on behalf of DLC and TCD in the United Kingdom concerning TCD's loss and involving the facts alleged in Plaintiffs' Complaint. As such, prior to requesting that TCD be included as an insured, DLC knew that TCD had incurred the same alleged loss, based upon the same alleged facts, upon which Plaintiffs' claims are based.

6. DLC's failure to disclose that TCD already incurred a loss when it requested that it be included as an insured constitutes a fraudulent and material misrepresentation, omission, concealment of fact or incorrect statement that was material to the acceptance of the risk or to the hazard assumed by BIC. By failing to inform BIC of its alleged loss, and the facts upon which it was based, DLC fraudulently omitted and/or concealed material information necessary to BIC's decision to issue the Endorsements. BIC would not have issued the Endorsements including TCD as an insured under the Primary Policy if it had known the true facts that TCD had already incurred a loss in connection with the purchase of the Taymouth Castle.

**II.**

**COUNT ONE**

**(Rescission of Endorsement Nos. 24, 26, and 28 under Ariz. Rev. Stat. § 20-1109)**

7. BIC incorporates herein by reference paragraphs 1 through 6 of this Counterclaim as though specifically alleged herein.

8. Section 20-1109 of the Arizona Revised Statutes provides as follows:

> All statements and descriptions in any application for an insurance policy or in negotiations therefore, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:
>
> 1. Fraudulent.
>
> 2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.
>
> 3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

9. DLC's failure to disclose that TCD already incurred a loss when it requested that it be included as an insured constitutes a fraudulent and material misrepresentation, omission, concealment of fact or incorrect statement that was material to the acceptance of the risk or to the hazard assumed by BIC. By failing to inform BIC of its alleged loss, and the facts upon which it was based, DLC fraudulently omitted and/or concealed material information necessary to BIC's decision to issue the Endorsements. BIC would not have issued the Endorsements including TCD as an insured under the Primary Policy if it had known the true facts that TCD had already incurred a loss in connection with the purchase of the Taymouth Castle.

10. BIC is entitled to and hereby rescinds Endorsement Nos. 24, 26, and 28 under Section 20-1109 of the Arizona Revised Statutes. Therefore, BIC requests that this Court declare that Endorsement Nos. 24, 26, and 28 are rescinded and null and void *ab initio*.

**III.**

**COUNT TWO**

**(Rescission of Endorsement Nos. 24, 26, and 28 under Common Law)**

11. BIC incorporates herein by reference paragraphs 1 through 10 of this Counterclaim as though specifically alleged herein.

12. For the same reasons alleged above in Count One, BIC is entitled to and hereby rescinds Endorsement Nos. 24, 26, and 28 under the common law of the State of Arizona. Therefore, BIC requests that this Court declare that Endorsement Nos. 24, 26, and 28 are rescinded and null and void *ab initio*.

**IV.**

**COUNT THREE**

**(Request for Attorneys' Fees)**

13. BIC incorporates herein by reference paragraphs 1 through 12 of this Counterclaim as though specifically alleged herein.

14. BIC requests an award of its reasonable attorney's fees incurred in this lawsuit under Section 12-341.01 of the Arizona Revised Statutes, which provides: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Here, the contract out of which this action arises is the Primary Policy.

Wherefore, for the foregoing reasons, Defendant Berkley Insurance Company respectfully requests that this Court enter a judgment in its favor declaring that Endorsement Nos. 24, 26, and 28 of the Primary Policy are rescinded and null and void *ab initio*, that Plaintiff take nothing by its lawsuit, and award BIC its reasonable attorney's fees and such other and further relief, both at law and in equity, to which it may be justly entitled.

DATED this 31st day of August 2020.

Respectfully submitted,

*/s/Michael Keeley*
Michael Keeley
(*Admitted Pro Hac Vice)*
C. Adam Brinkley
(*Admitted Pro Hac Vice)*
**CLARK HILL STRASBURGER**
901 Main Street, Suite 6000
Dallas, Texas 75202
Tel: (214) 651-4300
Fax: (214) 651-4330
mkeeley@clarkhill.com
abrinkley@clarkhill.com

-and-

Ryan J. Lorenz
**CLARK HILL PLC**
14850 N. Scottsdale Rd. Ste. 500
Scottsdale, AZ 85254
Tel: (480) 684-1107
Fax: (480) 684-1167
rlorenz@clarkhill.com

*Attorneys for Defendant*
*Berkley Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record this the 31st day of August, 2020, via the Court's CM/ECF Systems.

*/s/ C. Adam Brinkley*
C. Adam Brinkley